**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **MICHELLE WILLIAMS,** | § | |
| | § | |
| ***Plaintiff,*** | § | |
| | § | |
| **v.** | § | **C.A. No. 4:26-CV-04151** |
| | § | |
| **HOUSTON INDEPENDENT SCHOOL DISTRICT et al.** | § | |
| | § | |
| | § | |
| ***Defendants.*** | § | |

**DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FRCP 12(b)(1) AND 12(b)(6)**

Defendants Houston Independent School District, F. Mike Miles, Edward Heard, Daniel Girard, and Maritza Quinones file their Reply to Plaintiff's Response (Dkt. 10) to Defendants' Motion to Dismiss Plaintiff's First Amended Complaint pursuant to FRCP 12(b)(1) and 12(b)(6).

## Introduction

Plaintiff's Response underscores the deficiencies in her First Amended Complaint. Much of the Response addresses *Loper Bright Enterprises v. Raimondo* and whether this Court must defer to the Commissioner of Education—an argument Defendants never made. Plaintiff also attempts to cure her pleading by adding new factual allegations and theories concerning protected speech, individual knowledge, and her home duty assignment. Neither approach cures the deficiencies in the First Amended Complaint, and Plaintiff's claims should be dismissed.

## Reply

### A. Plaintiff Cannot Cure the Deficiencies in her First Amended Complaint Through New Allegations in Her Response.

A Rule 12(b)(6) motion is confined to the facts alleged in the operative complaint and materials properly incorporated into it. *Jackson v. City of Hearne*, 959 F.3d 194, 200 (5th Cir. 2020). Plaintiff therefore cannot cure deficiencies by asserting new factual theories for the first time in her Response. *See Fisher v. Metropolitan Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990); *Cutrera v. Bd. of Supervisors of Louisiana State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005).

The Response repeatedly supplies allegations missing from the First Amended Complaint. It newly characterizes Plaintiff as a "bilingual elementary teacher" and asserts that her August 19, 2025 email concerned required adaptations for more than 40 Emerging Bilingual students. Dkt. 10 at 4, 8 n.1, 12, 17. It asserts that Heard forwarded "protected complaints" to "division leadership" to establish Girard's knowledge before his August 15, 2025 classroom visit, although the First Amended Complaint alleges only that Plaintiff emailed Girard later that evening. Dkt. 8 ¶ 16; Dkt. 10 at 13, 18. And it supplies new details concerning Quinones's alleged August 27, 2025 telephone call and Plaintiff's home-duty conditions. Dkt. 10 at 15, 19, 22. The Court may consider facts contained in properly incorporated documents, but Plaintiff cannot use her Response to plead new factual theories absent from the First Amended Complaint.

### B. Plaintiff's Reliance on *Loper Bright* is Fundamentally Misplaced.

Plaintiff devotes a substantial portion of her Response to *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), contending that this Court must independently decide questions concerning "good cause," Texas Education Code § 21.259, and the Commissioner's standard of review. Dkt. 10 at 6–15. None of those arguments responds to Defendants' Motion. Defendants expressly stated that "[t]he Commissioner's Decision does not adjudicate Plaintiff's First

Amendment claim, and Defendants do not contend otherwise." Dkt. 9 at 13. Defendants similarly acknowledged that "[t]he Commissioner's Decision does not adjudicate Whistleblower causation." *Id*. at 23. Defendants do not ask this Court to defer to the Commissioner under *Chevron* or any other doctrine.

The administrative decisions are relevant because Plaintiff made them relevant. She alleges that the Board "distort[ed]" the hearing record and improperly relabeled factual findings, and she relies upon that characterization to infer pretext and retaliatory motive. Dkt. 8 ¶¶ 21–25. The incorporated documents demonstrate what actually occurred: the IHE recommended reinstatement; the Board disagreed and explained its reasons; and the Commissioner subsequently rejected Plaintiff's challenges to the Board's treatment of the IHE's Recommendation and concluded that substantial evidence supported termination. Dkts. 9-2, 9-3, 9-4. The Commissioner specifically determined that the existence of Plaintiff's August 19, 2025 email was undisputed and that it supplied record evidence supporting the Board's determination. Dkt. 9-4 at 9. That does not make the Commissioner's legal conclusions binding on this Court. It simply means Plaintiff's characterization of the incorporated administrative proceedings is not itself a well-pleaded fact that must be accepted as true.

Nor are there "four conflicting assessments of the same events," as Plaintiff falsely asserts. Dkt. 10 at 6, 9, 22. TEA determined whether HISD complied with particular IDEA requirements; the IHE addressed good cause; the Board made the ultimate Chapter 21 employment decision; and the Commissioner reviewed that decision under the statutory appellate standard. None adjudicated whether Defendants retaliated against Plaintiff for First Amendment speech or Whistleblower reports. *Loper Bright* therefore has nothing to do with the pleading deficiencies identified in Defendants' Motion.

### C. Plaintiff Still Fails to State a First Amendment Retaliation Claim Against HISD.

Plaintiff's Response does not cure the central defect in her claim against HISD. Defendants do not dispute that a single decision by a final policymaker can constitute municipal policy under *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986). But Plaintiff must still plausibly allege that HISD's final policymaker committed the underlying constitutional violation—*i.e.*, that the Board terminated Plaintiff *because of* protected speech.

In her First Amended Complaint, Plaintiff *does not allege* that any Board member made a retaliatory statement, directed retaliation against Plaintiff, or even knew of the August 14, 2025 Board comments that Plaintiff identifies as her "primary protected activity." Dkt. 8 ¶¶ 28, 35–39. That omission is critical. *See Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 603–04 (5th Cir. 2001) (where there was no evidence that the school board knew of the protected activity, the plaintiff could not show that the activity motivated the Board's decision).

Plaintiff instead relies on her allegation that the Board manipulated the IHE's Recommendation. But the Commissioner rejected the administrative-law premise underlying that allegation, concluding that the Board permissibly treated the challenged legal determinations as conclusions of law, did not improperly create new findings, and had substantial evidence supporting termination. Dkt. 9-4. Again, while those determinations do not adjudicate First Amendment motive, they do demonstrate why Plaintiff's disagreement with the administrative outcome does not itself plausibly establish retaliatory motive.

Plaintiff's alleged custom fares no better. *Russo*, *Tittle*, and *Fantini* are offered in an effort to demonstrate a practice of modifying favorable IHE recommendations, but not a widespread practice of First Amendment retaliation. Indeed, Plaintiff expressly disclaims *Fantini* as a retaliation comparator. Dkt. 8 ¶ 23(c). As to *Tittle*, the First Amended Complaint does not allege

that the Board acted because of First Amendment protected speech. Moreover, the Response's reliance on *Russo* supplies, at most, one additional disputed employment proceeding allegedly involving protected speech. That does not plausibly establish a persistent and widespread HISD custom of retaliating against employees for exercising First Amendment rights. Plaintiff's First Amendment retaliation claim against HISD should be dismissed.

**D. The Individual Claims Still Fail, and the Individual Defendants Are Entitled to Qualified Immunity.**

Plaintiff's Response neither identifies facts plausibly establishing that each Individual Defendant acted because of Plaintiff's protected speech nor identifies clearly established precedent particularized to the conduct attributed to each Defendant.

1. Defendant Miles.

Plaintiff now argues that Miles initiated termination proceedings "citing protected speech" (Dkt. 10 at 17), but the speech Plaintiff refers to is the August 19, 2025 curriculum email, not the February 13, 2025 or August 14, 2025 Board speech the First Amended Complaint identifies as her "primary protected activity." Dkt. 8 ¶ 28. Plaintiff cannot transform an employment-related communication concerning how she would implement curriculum into her pleaded citizen-speech theory through a response brief. If Plaintiff now contends that the August 19, 2025 email itself constitutes First Amendment protected citizen speech, that communication—made to her principal concerning how she would perform her classroom teaching responsibilities—implicates *Garcetti v. Ceballos*, 547 U.S. 410, 421–22 (2006), rather than avoiding it. In any event, neither *Lane* nor *Nixon* clearly establishes that a superintendent violates the First Amendment by initiating Chapter 21 proceedings under circumstances materially similar to those alleged here.

2. <u>Defendant Heard.</u>

Plaintiff emphasizes that Heard forwarded her concerns to "division leadership" on August 4 and August 10, 2025. Dkt. 10 at 18. But those communications occurred *before* Plaintiff's August 14, 2025 Board speech and therefore cannot establish retaliation for that later speech. They instead concern Plaintiff's internal workplace complaints regarding curriculum and instructional practices—the category of employee speech that raises the *Garcetti* inquiry Plaintiff avoided by identifying her public Board comments as her primary protected activity. Nor does Plaintiff identify clearly established precedent holding that a principal violates the First Amendment by continuing to supervise, coach, document, and direct a teacher after she engages in public criticism of district policy.

3. <u>Defendant Girard.</u>

Plaintiff still does not plausibly allege that Girard knew about her August 14, 2025 Board comments when he entered her classroom on August 15, 2025. The First Amended Complaint alleges that Plaintiff emailed Girard only later that evening. Dkt. 8 ¶ 16. The Response's assertion that earlier workplace complaints had been forwarded to "division leadership" does not establish Girard's personal knowledge of Plaintiff's subsequent Board speech, and institutional knowledge is not a substitute for the personal involvement required under § 1983. Plaintiff's qualified-immunity response relies on *Lane* and *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006), but *Burlington Northern* is a statutory Title VII retaliation case; it does not clearly establish the constitutional limits applicable to Girard's classroom observation, supervisory meeting, or Support Plan.

4. Defendant Quinones.

The First Amended Complaint alleges that Quinones was "aware" of Plaintiff's speech and authored an allegedly fabricated abandonment report. Dkt. 8 ¶¶ 30–31. It does not plead facts showing how or when Quinones learned of Plaintiff's Board speech or connecting the report to that speech. The Response adds details concerning the August 27, 2025 incident but still identifies no facts plausibly establishing retaliatory motive. Nor does *Lane* clearly establish that an assistant principal violates the First Amendment by participating in absence or abandonment documentation under circumstances materially similar to those alleged here.

Qualified immunity requires clearly established law particularized to the conduct confronting each official. *Mullenix v. Luna*, 577 U.S. 7, 12 (2015). Plaintiff repeatedly asserts that "no reasonable" official could have believed the challenged conduct lawful (Dkt. 10 at 19–21), but identifies no controlling precedent placing the constitutionality of the particular conduct attributed to Miles, Heard, Girard, or Quinones beyond debate. Repeating the qualified immunity conclusion does not satisfy Plaintiff's burden. The individual capacity claims should be dismissed.

**E. HISD Retains Governmental Immunity From Plaintiff's Texas Whistleblower Act Claim.**

Plaintiff's Response effectively narrows her Whistleblower theory. Although the First Amended Complaint relies upon two 2024 reports, the Response now describes that activity as "additional context" and identifies the August 2025 TEA complaints as the "principal protected activity" supporting the TWA claim. Dkt. 10 at 16. That retreat does not cure her failure to allege facts demonstrating that anyone at HISD knew of either 2024 report. Without knowledge, those reports cannot have caused an adverse personnel action. *See Office of the Att'y Gen. v. Rodriguez*, 605 S.W.3d 183, 192–94 (Tex. 2020); *City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 69–70 (Tex. 2000).

As to the August 2025 TEA complaints, Plaintiff now identifies the August 28, 2025 home-duty placement as the "primary adverse personnel action for TWA purposes." Dkt. 10 at 22. That newly emphasized theory suffers from additional defects. First, the First Amended Complaint merely alleges that Plaintiff was removed from the classroom and placed on home duty on August 28, 2025. Dkt. 8 ¶ 19. It pleads no facts showing that the assignment materially affected her compensation, professional standing, benefits, or other conditions of employment such that it would likely dissuade a reasonable, similarly situated employee from reporting a violation of law. *See Montgomery Cnty. v. Park*, 246 S.W.3d 610, 614–16 (Tex. 2007). Plaintiff attempts to supply the missing materiality allegations in her Response by newly describing home duty as "mandatory residential confinement during all contractual work hours with twice-daily telephone check-ins." Dkt. 10 at 22. Those allegations do not appear in the First Amended Complaint and cannot cure its pleading deficiency through a response brief.

Second, the First Amended Complaint does not allege that Plaintiff satisfied the TWA's jurisdictional prerequisite of timely invoking HISD's grievance or appeal procedures with respect to the August 28, 2025 home-duty assignment. *See* Tex. Gov't Code § 554.006(a)–(b); *Fort Bend Indep. Sch. Dist. v. Gayle*, 371 S.W.3d 391, 395–96 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). Indeed, the grievance hearing Plaintiff now emphasizes occurred on August 27, 2025—the day before the home-duty action she now identifies as her principal TWA violation. Dkt. 10 at 15. Nothing in the First Amended Complaint alleges that Plaintiff thereafter timely invoked an applicable grievance or appeal procedure asserting that the August 28, 2025 home-duty assignment constituted retaliation for her TEA reports. Absent such allegations, Plaintiff has not pleaded facts establishing compliance with § 554.006 or tolling the TWA's 90-day limitations period. *See* Tex. Gov't Code §§ 554.005–.006; *City of Madisonville v. Sims*, 620 S.W.3d 375, 378–79 (Tex. 2020).

Nor does Plaintiff's newly emphasized home-duty theory establish causation for the materially different personnel action occurring on April 23, 2026—the termination of her contract. Plaintiff's August 2025 TEA reports preceded that termination by approximately eight months. Accordingly, the termination receives no presumption of causation under § 554.004(a). *See Alejandro v. Robstown Indep. Sch. Dist.*, 131 S.W.3d 663, 670 (Tex. App.—Corpus Christi–Edinburg 2004, no pet.) (holding that termination occurring more than ten months after the protected report was not entitled to the statutory presumption of causation). Indeed, Plaintiff's Response now identifies the August 28, 2025 home duty placement as the "primary adverse personnel action for TWA purposes" and characterizes the April 23, 2026 termination merely as "additional evidence of the retaliatory scheme." Dkt. 10 at 22. That reformulation tacitly recognizes the defect identified in Defendants' Motion: the statutory presumption does not apply to the termination itself.

The First Amended Complaint alleges no other facts plausibly establishing that the August 2025 TEA complaints were the but-for cause of the April 23, 2026 termination. The termination occurred after a two-day evidentiary hearing, an IHE Recommendation, Board review, and a written Board Decision identifying an employment-related basis for termination. The Commissioner thereafter determined that substantial evidence supported that basis. Dkts. 9-2, 9-3, 9-4. The Commissioner's Decision does not adjudicate Whistleblower causation, but neither does the temporal proximity surrounding the August 28, 2025 home duty placement establish causation for a materially different personnel action eight months later.

Plaintiff therefore has not pleaded facts establishing a TWA violation sufficient to invoke HISD's limited waiver of governmental immunity. Her 2024 reports fail for lack of alleged knowledge; her newly emphasized August 28, 2025 home duty theory is not adequately pleaded

as a materially adverse personnel action and is not alleged to have satisfied the TWA's jurisdictional grievance and limitations requirements; and her April 23, 2026 termination falls outside the statutory presumption and is not otherwise plausibly alleged to have been caused by the August 2025 reports. HISD therefore retains its governmental immunity, and Plaintiff's TWA claim should be dismissed with prejudice pursuant to Rule 12(b)(1) or, alternatively, Rule 12(b)(6).

## Prayer

Defendants request that the Court grant their Rule 12(b)(1) and Rule 12(b)(6) Motion to Dismiss, dismiss all of Plaintiff's claims against them with prejudice, and award Defendants their taxable costs of court.

Respectfully submitted,

SPALDING NICHOLS LAMP LANGLOIS

/s/ Paul A. Lamp
PAUL A. LAMP
State Bar No. 24002443
Federal I.D. 21711
plamp@snll-law.com
3700 Buffalo Speedway, Suite 500
Houston, Texas 77098
Telephone: 713-993-7060
Facsimile: 888-726-8374

ATTORNEY FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I certify that on this the 21st day of September, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification to all counsel of record.

/s/ Paul A. Lamp
Attorney for Defendants